| | | |
|---|---|---|
| JAMES B. HARGETT, by his guardian, Kathy Humphries, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CAUSE NO. 1:11-cv-1316-JMS-DKL |
| CORRECTIONAL MEDICAL SERVICES, INC.; INDIANA DEPARTMENT OF CORRECTION; DR. MICHAEL MITCHEFF, D.D.O.; DR. CHARLES R. ZIMONT, M.D.; DANIEL S. MIHALO, M.D.; MICHELLE L. HARRIS, L.P.N.; and DAVID CLARK, R.N., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**
on
**Defendant Dr. Zimont's *Motion to Dismiss* [doc. 23]**

In this suit, plaintiff James B. Hargett alleges that, as a result of the defendants' failures to provide him with adequate medical care while he was in the custody of the Indiana Department of Correction ("DOC"), he suffered and continues to suffer severe physical and mental injuries. According to the Amended Complaint, the DOC contracted with defendant Correctional Medical Services, Inc. ("CMS") to provide medical services at Mr. Hargett's facility. Dr. Michael Mitcheff, D.D.O., was CMS's regional medical director, responsible for its medical policies and protocols at Mr. Hargett's facility.

1

Defendant physicians Charles R. Zimont, M.D., and Daniel S. Mihalo, M.D., and nurses Michelle L. Harris, L.P.N., and David Clark, R.N., were employed by CMS or an agency that contracted with and supplied personnel to CMS and/or the DOC. All of the individual defendants allegedly were personally involved in Mr. Hargett's medical care. In Count I of the Amended Complaint, Mr. Hargett sues all of the defendants under 42 U.S.C. § 1983 for deprivation of his right under the Eighth Amendment of the United States Constitution not to be subjected to cruel and unusual punishment and, in Count II, he sues CMS, Dr. Mihalo, and nurses Harris and Clark for negligence under Indiana common law. As noted in this magistrate judge's Report and Recommendation on the DOC's motion to dismiss, Mr. Hargett has stated that he is asserting state-law claims against all of the defendants under Count I as well but he has not articulated or indicated specific causes of action.

Doctors Zimont now moves under Fed. R. Civ. P. 12(b)(1) to dismiss Mr. Hargett's claim against him without prejudice for lack of subject-matter jurisdiction. He argues that, because the conduct described in the Amended Complaint "relates to" or "sounds in" medical malpractice and Mr. Hargett has failed to follow the requirements of a medical-malpractice action as provided in Indiana's Medical Malpractice Act, Ind. Code 34-18-1-1, *et seq.* ("Act"), this Court lacks jurisdiction of his claim. Specifically, Dr. Zimont argues that this suit violates the Act's prohibition on malpractice suits in court before an administrative Medical Review Panel has issued a decision on a plaintiff's proposed complaint. Ind. Code

34-18-8-4. An exception allows a court action to be filed while a proposed complaint is pending before a Panel, but the court complaint may not contain information identifying the defendant and the plaintiff may not pursue the court action before the Panel issues its decision. *Id.* 34-18-8-7.

In the Amended Complaint, Mr. Hargett alleges that he had an aortic valve replaced in 2006. In 2009, while he was incarcerated with the DOC, he was hospitalized (presumably, for a reason related to his heart condition) and the hospital discharge order directed that he take clopidogrel, an anti-platelet medication, as treatment for his increased risk for blood clotting and resultant strokes and heart attacks. DOC medical personnel refused to return him to the hospital for a scheduled follow-up appointment. At some point, Mr. Hargett stopped receiving his prescribed clopidogrel and he began submitting written requests for it and for other unspecified medications. On August 10, 2009, Mr. Hargett advised the DOC and its medical department in writing that he was a chronic-care heart patient and that he had been without his clopidogrel, by that time, for thirteen days.[1] Mr. Hargett then commenced a decline in his health: on August 15, he advised the DOC and medical staff again that he was a chronic-care heart patient and that he then was experiencing fever and body aches; on August 17, when he was examined by prison medical staff, he advised that he was having chest pains; on August 20, he continued to complain of vision symptoms; and, thereafter, his symptoms worsened. On August 22,

---

[1] The Amended Complaint does not indicate if Mr. Hargett ever was given his clopidogrel after his requests.

2009, he was found unresponsive in his dorm and was sent to a hospital. Mr. Hargett was forty-three years old at the time.

Hospital staff determined that Mr. Hargett had suffered a severe cerebral infarction (a severe stroke) and that he was also suffering from endocarditis.[2] He was diagnosed with right hemiplegia[3] and aphasia.[4] He understands seventy to eighty percent of speech and has severe expressive difficulties. He now remains primarily in a wheelchair with significantly reduced mobility and a permanent disability. The DOC eventually release Mr. Hargett on humanitarian grounds.

Mr. Hargett, by his guardian (his sister), alleges that the defendants violated his Eighth-Amendment rights when they (1) denied him medications and treatment based upon a medical protocol which is inconsistent with current medical treatment standards;

---

[2] Inflammation of the endocardium, the linings of the cavities and valves of the heart, usually caused by bacterial infection. The symptoms of endocarditis include fever, shortness of breath, rapid heart beat, and heart murmurs. J. E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* at E-94 (2011).

[3] "Paralysis affecting one side of the body. The condition is usually due to damage involving one side of the brain. It may, however, result from damage to the spinal cord, the nerve tissue located in the spine." *Attorneys' Dict. of Medicine* at H-68.1 to H-69.

[4] "The loss or impairment of one's ability to express thoughts and ideas by means of speech, writing, and signs (or gestures), and/or to understand speech, writing, and sign language. The condition of aphasis is *not* due to a mechanical defect in the structures of the speech organs, the eyes, or the hearing organs; it is due to the loss by the brain of its ability to interpret the information received from the eyes or ears, and to send out the directing impulses to the organs involved in speech, writing, etc." *Attorneys' Dict. of Medicine* at A-468.

(2) denied him treatment for endocarditis based in part on a substandard medical protocol; (3) failed to monitor his condition when he was developing symptoms of endocarditis and precursor symptoms of a stroke; (4) failed to transport him for a scheduled post-discharge follow-up appointment at the hospital after he was examined by prison medical staff; (5) failed to monitor his condition after depriving him of his prescribed clopidogrel; (6) failed to provide him with post-stroke occupational, speech, and physical therapy, which worsened his permanent disability; and (7) generally failed to provide him adequate medical care. Mr. Hargett alleges that the defendants acted and/or failed to act with deliberate indifference to his medical needs and thus violated the Eighth Amendment.

The elements of an Eighth-Amendment claim are well-established:

> The Eighth Amendment's prohibition against cruel and unusual punishment . . . prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." It thus requires that the government provide "medical care for those whom it is punishing by incarceration." The Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." Accordingly, "deliberate indifference to serious medical needs" of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.
>
> A successful deliberate indifference claim is comprised of both an objective and a subjective element. First, an inmate must demonstrate that objectively the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." In the medical care context, this objective element is satisfied when an inmate demonstrates that his medical need itself was sufficiently serious. A medical need is considered sufficiently serious if the inmate's

5

condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." Notably, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." Second, an inmate must establish that prison officials acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care. "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk."

Applying the above to prison medical professionals, we have stated that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." The burden is high on a plaintiff making such a claim: "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." However, a successful plaintiff need not "show that he was literally ignored" in his demands for medical treatment, and a defendant's showing that a plaintiff receive "*some*" treatment does not resolve the issue conclusively if the treatment was "blatantly inappropriate."
 Finally, the Eighth Amendment "protects [an inmate] not only from deliberate indifference to his or her *current* serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to *future* health."

*Roe v. Elyea*, 631 F.3d 843, 856-58 (7th Cir. 2011) (citations omitted).

Despite Count I's terminology and its assertions of Eighth-Amendment violations, Dr. Zimont argues that Count I actually "relates to allegations of medical malpractice," "sounds in medical malpractice," is "grounded in alleged medical malpractice," and that

6

the "crux of this action involves a claim of medical malpractice." Relying on Indiana state-court decisions interpreting Indiana's Medical Malpractice Act, Dr. Zimont contends that only a medical-malpractice claim is stated because the alleged violations occurred while he was rendering professional services. *Madison Center, inc. v. R. R. K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006) ("the test [of a malpractice action] is whether the claim is based on the provider's behavior or practices while "acting in his professional capacity as a provider of medical services." ), *trans. denied*; *Winona Memorial Hospital, L.P., v. Kuester*, 737 N.E.2d 824, 828 (Ind. Ct. App. 2000) ("the Act applies to conduct, curative or salutary in nature, by a health care provider acting in his or her professional capacity, and is designed to exclude only conduct which is unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill or judgment."). Count I's allegations that defendants denied Mr. Hargett his medications and denied him treatment for his symptoms of endocarditis based, in part, on "a medical protocol which is inconsistent with current medical treatment standards," Amended Complaint ¶¶ 29 and 30, are classic malpractice claims, according to Dr. Zimont; and even more: they constitute an admission that Mr. Hargett is complaining about Dr. Zimont's "actions, behavior and practices as a provider of medical services" which places his claim under the Act. Because he treated Mr. Hargett in his professional capacity, his treatment related to the promotion of Mr. Hargett's health, and he exercised his professional skill and judgment in doing so, Dr. Zimont argues that only a malpractice claim is possible against him. Because Mr. Hargett has not complied with the Act's requirements of prior submission to a Medical Review Panel and

either a Panel decision or an anonymous-defendant complaint, this Court does not have jurisdiction over the claim.

Mr. Hargett has pled a colorable claim of an Eighth-Amendment deprivation. He alleged that Defendants, including Dr. Zimont, denied him his hospital-prescribed anti-coagulant and other medications after repeated requests for them and notifications that he was a chronic-care heart patient and had been without his anti-coagulant for some time. He alleged notice to Defendants of a serious and worsening health condition. He alleged that Defendants failed to monitor and provide treatment for his reported worsening symptoms of endocarditis and impending stroke (*e.g.*, fever, body aches, chest pains, vision problems). He alleged that Defendants failed to transport him back to the hospital for a scheduled follow-up appointment. He alleged that Defendants' acts or omissions were a direct and proximate cause of his stroke and other severe injuries. He alleged that Defendants' failure to provide him with post-incident therapy and treatment exacerbated his injuries. He alleged that Defendants acts or omissions were based in part on a medical protocol that is inconsistent with current medical standards. He alleged that Defendants acted and/or failed to act with deliberate indifference under the Eighth Amendment. Reasonable inferences can be drawn from these allegations that Mr. Hargett had an objectively serious medical condition; that Defendants, including Dr. Zimont, were aware of his condition; and that they were deliberately indifferent to it.[5]

---

[5] Dr. Zimont did not directly address the sufficiency of Mr. Hargett's allegations of an Eighth-Amendment claim until his reply. However, arguments raised for the first

As a judge in our sister district recently found when rejecting the same arguments made by Dr. Zimont in a similar case, *Jester v. Zimont*, No. 1:11-cv-14, *Opinion and Order* [doc. 45], 2011 WL 5980204 (N.D. Ind., Nov. 29, 2011), Dr. Zimont's arguments fail to account for the fact that the same allegations can support multiple causes of action, in this case, either medical malpractice or deliberate indifference, depending on which evidence the jury credits and the inferences that they draw from that evidence. The allegations that Dr. Zimont argues support only a medical-malpractice claim are not necessarily inconsistent with a deliberate-indifference claim.

Therefore, Dr. Zimont has not shown that the Court lacks subject-matter jurisdiction of Count I's § 1983 claim that Dr. Zimont infringed Mr. Hargett's Eighth-Amendment right to not be subjected to cruel and unusual punishment.

Dr. Zimont's argument has some merit, however. Mr. Hargett did not dispute, or even address, Dr. Zimont's argument that, to the extent that a state-law medical-practice claim is asserted against him in Count I, the Court lacks jurisdiction over it for failure to comply with the state's statutory requirements. Mr. Hargett has not alleged in the

---

time in a reply are forfeited. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). In addition, because his arguments are in the nature of a Rule 12(b)(6) motion to dismiss for failure to state a claim, they go to the merits of the Eighth-Amendment claims, which is not appropriate on the present motion to dismiss for lack of subject-matter jurisdiction. Moreover, Dr. Zimont's argument consists only of an explanation of Eighth-Amendment law, a recounting of some of the Amended Complaint's allegations, and then a conclusory assertion that the allegations constitute only medical malpractice, not deliberate indifference.

Amended Complaint or asserted on the present motion that a complaint against Dr. Zimont was previously filed with a Medical Review Panel or that a Panel has issued a decision on such a complaint. And the Amended Complaint is obviously not anonymous regarding Dr. Zimont and Mr. Hargett has not requested that his action against Dr. Zimont be stayed pending exhaustion of the administrative process. Therefore, to the extent that a medical-malpractice claim is asserted in Count I, Dr. Zimont's motion has merit. This magistrate judge's Report and Recommendation on the Indiana DOC's motion to dismiss found that it was unclear whether, and which, state-law claims are asserted in Count I, based on Mr. Hargett's assertions (in the Amended Complaint itself and in his briefing on the DOC's motion to dismiss) that state-law claims are pled but the absence of articulation of any such claims. In his response on the present motion, however, Mr. Hargett clearly states that "Count 1 of [the Amended Complaint] does not allege a medical malpractice claim but alleges a violation of the Eighth Amendment of the United States Constitution. Count 2 of that same complaint alleges a malpractice action but does not name Dr. Zimont in that count." (*Response to Defendant Dr. Charles Zimont Motion to Dismiss Without Prejudice* [doc. 33] at 1.) Certainly, the express assertion of medical-malpractice claims in Count II indicates no malpractice claims are asserted in Count I.

Therefore, this magistrate judge recommends that Dr. Zimont's motion be **GRANTED IN PART** and **DENIED IN PART**. To the extent that an Indiana medical-malpractice claim is asserted against Dr. Zimont in Count I of the Amended Complaint, it

should be **dismissed without prejudice**.  The motion otherwise should be **denied**.

Within fourteen days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations herein.  Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  "[A] party normally waives the right to contest a magistrate judge's conclusions, both factual and legal, by not presenting an objection to the district court."  *Tumminaro v. Astrue*, ___ F.3d ___, 2011 WL 5301607, *3 (7th Cir., Nov. 1, 2011).  A district court is required to make a *de novo* determination of only those portions of a report or specified proposed findings or recommendations to which an objection is made.  28 U.S.C. § 636(b)(1)(C).  A party's failure to object to a magistrate judge's recommended finding or recommendation regarding an issue may result in a forfeiture of that issue on further appeal.  *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010).

**SO RECOMMENDED.**

Date:  03/01/2012

_Denise K. LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

11

Distribution:

James F. Bleeke
Jeb Adam Crandall
Christopher D. Simpkins
BLEEKE DILLON CRANDALL PC
jim@bleekedilloncrandall.com
jeb@bleekedilloncrandall.com
chris@bleekedilloncrandall.com

Caroline Burchett Briggs
BRIGGS LAW OFFICE
briggs.law@frontier.com

Corinne T. W. Gilchrist
Don R. Hostetler
OFFICE OF THE INDIANA ATTORNEY GENERAL
corinne.gilchrist@atg.in.gov
donald.hostetler@atg.in.gov

Jarrod Alvin Malone
HALL RENDER KILLIAN HEATH & LYMAN
jmalone@hallrender.com

John Kenneth Morris
MORRIS LAW FIRM
patent.lawyer@frontier.com